IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CMG HOLDCO, LLC,                              :

      Plaintiff,                            :    C.A. No.

   v.                                               :

KEVIN SCOTT VIOLETTE,                         :

      Defendant.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff CMG HoldCo, LLC ("CMG Holdco"), by and through its undersigned counsel, as and for its Complaint against defendant Kevin Scott Violette ("Violette" or "Defendant"), alleges:

## PRELIMINARY STATEMENT

1. This action arises from Defendant's deliberate, planned efforts to engage in competition with CMG Holdco in the heating, ventilation and air conditioning systems ("HVAC") industry in the State of North Carolina, in violation of the express terms of a restrictive covenant agreement.

2. In November 2021, CMG Holdco acquired a majority equity interest in DesignBuild Mechanical LLC[1], an HVAC company doing business primarily in North Carolina and South Carolina. It did so through the purchase of a majority equity interest in DBM Parent LLC ("DBM Parent"), which directly owned 100% of the member interests in DesignBuild (the

---

[1] On October 27, 2021, in connection with the November 2021 acquisition, DesignBuild Mechanical Corporation, a North Carolina corporation, changed its corporate form and converted into a North Carolina limited liability company, DesignBuild Mechanical LLC. For convenience, DesignBuild Mechanical Corporation and DesignBuild Mechanical LLC are collectively referred to herein as "DesignBuild."

"Sale"). CMG Holdco paid more than $9 million in the Sale. As a result of the Sale, CMG owns a majority indirect interest in DesignBuild.

3. Immediately prior to the Sale, Defendant owned an indirect 50% interest in DesignBuild.[2] Pursuant to the terms of the Sale, Defendant and the other 50% owner of DesignBuild, David Smith ("Smith"), sold a combined 80% indirect interest in DesignBuild to CMG Holdco. Defendant and Smith each retained 10% direct or indirect interests in DesignBuild.

4. In connection with CMG Holdco's acquisition of a majority interest in DesignBuild in November 2021, Defendant was paid, directly or indirectly, through Defendant's family trust, approximately $3.0 million.

5. In November 2021, contemporaneously with CMG Holdco's acquisition of a majority interest in DesignBuild, Defendant entered into a Restrictive Covenant Agreement, dated as of November 1, 2021, by and between, among others, Defendant and CMG Holdco (the "Restrictive Covenant Agreement").[3] The Restrictive Covenant Agreement with Defendant was material and essential to CMG Holdco entering into the Sale.

6. After the Sale, Defendant continued to be employed by DesignBuild. However, Defendant's employment with DesignBuild was terminated for cause on or about February 17, 2023.

7. After Defendant's termination from DesignBuild, he embarked on a wide-ranging campaign of harassment and disparagement of CMG Holdco and its parents, subsidiaries and affiliates, as well as their principals and employees (collectively, the "CMG Parties"). He

---

[2] Violette held his interest in DesignBuild through the Kevin Scott Violette Revocable Trust (the "Violette Trust"), for which he was the Trustee.

[3] A true and correct copy of the Restrictive Covenant Agreement is annexed hereto as <u>Exhibit 1</u>.

disparaged the CMG Parties to employees and clients of the entities and others, including members of the local HVAC community. Defendant did all of this in violation of his express obligations under the Restrictive Covenant Agreement.

8. Defendant's breaches of the Restrictive Covenant Agreement include his deliberate attempt to directly compete with CMG Holdco by bidding on an HVAC-related project in Charlotte, North Carolina. The project was of the same type that CMG Holdco regularly seeks and undertakes through DesignBuild.

9. These actions are in clear violation of Defendant's express contractual obligations to CMG and have caused, and continue to cause, the CMG Parties to suffer irreparable, monetary, reputational and other injury.

## JURISDICTION AND VENUE

10. This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1). CMG Holdco and all of its members, on the one hand, and Defendant on the other hand, are citizens of different states and have their principal places of business in different states. Moreover, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district because the Restrictive Covenant Agreement, to which Defendant and CMG Holdco are parties, requires litigation of all disputes related to it in Delaware federal court, if the forum is available to adjudicate the dispute. See Ex. 1 § 12. In addition, the parties expressly "irrevocably submit[ted]" to "exclusive jurisdiction," "waive[d] any objection to . . . venue," "waive[d] any objection that . . . [this Court is] an inconvenient forum or do[es] not have jurisdiction," and "agree[d] not to seek a transfer of venue on the basis that another forum is more convenient." Ex. 1 § 12.

12. The Restrictive Covenant Agreement also provides that Delaware law shall

apply. Ex. 1 § 12.

## THE PARTIES

13. Plaintiff CMG Holdco is a limited liability company formed under the laws of the state of Delaware, with its principal place of business in Florida. CMG Holdco is wholly owned by CMG Parent, LLC ("CMG Parent"), a Delaware corporation with its principal place of business in Florida. CMG Parent is owned by (a) Crete Mechanical Group, Inc. ("CMG"), a Delaware corporation with a principal place of business in Florida; (b) CMG Buyer, Inc., a Delaware corporation with a principal place of business in Florida; and (c) 12 individuals.  Of these individuals, four reside in Florida, two in New York, and one each in Texas, Georgia, South Carolina, Minnesota, Tennessee, and Virginia.

14. Defendant Violette is an individual who, at all times relevant herein, resided and continues to reside in Davidson, North Carolina.

## BACKGROUND FACTS

15. CMG, the indirect majority owner of CMG Holdco, owns interests in HVAC-related businesses throughout the United States.  Through its network of affiliated entities, CMG provides a host of essential building services across commercial HVAC, electrical, plumbing, building automation and controls, including, among other things, pre-construction design build, product selection and acquisition, construction, installation and maintenance. CMG's association with its affiliates is well known in the HVAC space, and their respective goodwill and reputation are linked and enhanced thereby.

### Defendant's Contractual Obligations to CMG Holdco

16. In exchange for the ***approximately $3.0 million*** he received indirectly from CMG Holdco for his 40% interest in DesignBuild, Defendant agreed that, for a period of five years

4

after the execution of the Restrictive Covenant Agreement (*i.e.*, November 1, 2021), he would not engage in any business in North Carolina or South Carolina of the type engaged in by DesignBuild. Specifically, Section 1(a)(1) of the Restrictive Covenant Agreement provides:

> **For a period of five (5) years from and after the Closing Date (the "Restricted Period"), each Restricted Party[4] shall not, and shall cause his, her or its respective Affiliates not to, directly or indirectly, whether as an officer, director, shareholder, member, manager, investor, partner, proprietor, business associate, employee, independent contractor, consultant, representative or otherwise, anywhere in the states of North Carolina and South Carolina (the "Territory"), own, operate, manage, control, promote, market, become or be financially interested in, consult with or for, perform services for, or associate in a business relationship with, or facilitate, a Competitor**. For purposes of this Agreement, a "Competitor" is any business engaged in the Restricted Business, or which has taken steps with the intention of engaging in the Restricted Business, or which is reasonably likely to engage in the Restricted Business during the Restricted Period. For purposes of this Agreement, "Restricted Business" shall mean any business activities that the Purchased Companies or any of their Subsidiaries have, in the twelve (12) months immediately preceding the Closing Date or the applicable date of determination, engaged in, or are actively engaged in, or have taken steps to become engaged in at any time during the Restricted Period.

Ex. 1 § 1(a)(1) (emphasis added).

17. In addition, the Restrictive Covenant Agreement prohibits Defendant for five years from (directly or indirectly) soliciting, recruiting, inducing, hiring or otherwise encouraging to leave, any: (i) customers or clients of DesignBuild or affiliates; (ii) partners, distributors, suppliers, or vendors of DesignBuild or affiliates; and (iii) present or immediate past employees, consultants, independent contractors or any individual who was an employee, consultant or independent contractor of DesignBuild or affiliates. Ex. 1 § 1(a)(2)-(4).

18. Defendant further acknowledged that these provisions "are reasonable and necessary to protect the legitimate interests of [CMG Holdco], [DesignBuild and its parent

---

[4] Violette is included in the definition of a Restricted Party. Ex. 1 p. 1.

5

company] and their Subsidiaries and constitute a material inducement to [CMG Holdco] to enter into this Agreement and consummate the transactions contemplated by this Agreement." Ex. 1 § 1(a)(5).

19. In addition, Defendant agreed not to disclose or use any Confidential Information belonging to CMG Holdco, DesignBuild or any of their affiliates:

> Each Restricted Party acknowledges that such Restricted Party has had access to, and became familiar with Confidential Information, and that such Confidential Information is a valuable and unique asset of the [DesignBuild, its parent company] and their Affiliates. Therefore, each Restricted Party agrees and undertakes such Restricted Party (i) will maintain securely and hold in strict confidence all Confidential Information received, acquired or developed by such Restricted Party whether before, on or following the date hereof or while employed by the Purchased Companies or any of their Subsidiaries or their respective Affiliates, (ii) will not, in whole or in part, disclose Confidential Information to any Person under any circumstances . . . and (iii) will not, in whole or in part, use any Confidential Information for any purpose (other than for and as authorized in writing by Buyer or, in the case of a Restricted Party who is employed by a Purchased Company or any of its Subsidiaries, in accordance with such Person's employment agreement, as applicable). . . .  For purposes of this Agreement, "**Confidential Information**" shall mean the terms and existence of the Purchase Agreement and the Ancillary Agreements (including this Agreement) and the negotiations relating thereto and all documentation obtained by the Restricted Parties in connection with the Transaction, and all non-public, confidential or proprietary information of or relating to the business and activities of [CMG Holdco], [DesignBuild and its parent company], any of their respective Affiliates, the predecessors and successors of any of the foregoing, or any third party with whom [CMG Holdco or DesignBuild and its parent company] or any of their respective Affiliates conducts business including, without limitation, trade secrets, client, customer and supplier lists or other client, customer or supplier information, computer or other files, projects, product development, computer disks or other media, computer hardware or computer software programs, management and marketing plans, financial information, methodologies, inventions, know-how, research, development, processes, practices, approaches, projections, forecasts, formats, systems, data gathering methods, and/or strategies of [CMG Holdco], [DesignBuild and its parent company] or any of their respective Affiliates, and all information received by [CMG Holdco], [DesignBuild and its parent company] or any of their respective Affiliates under an obligation of confidentiality to a third party. Notwithstanding the foregoing, Confidential Information shall not

> include any information that is generally available, or becomes generally available, to the public, other than as a result of a direct or indirect unauthorized disclosure by a Restricted Party or any other Person subject to a confidentiality obligation.

Ex. 1 ¶ 2.

20. In addition, Defendant agreed not to make any comment that would "disparage, denigrate or malign," among others, DesignBuild, CMG Holdco and their principals and affiliates. Specifically, 1(b) of the Restrictive Covenant provides:

> Each Restricted Party agrees that such Restricted Party shall not, at any time, directly or indirectly (including through any other Person), make any public or private statements (whether orally, in writing or in any medium) that disparage, denigrate or malign the [DesignBuild and its parent company], any of their Subsidiaries, [CMG Holdco], ZBS Mechanical Group, LLC, ZBS Mechanical Group Fund 2, LLC, ZBS Mechanical Group Parallel Fund, LLC, any of their respective Affiliates, representatives, or the businesses, activities, operations, affairs, reputations, prospects, officers, managers, equity holders, directors or employees of any of the foregoing (the "Protected Persons"). For purposes of clarification, and not limitation, a statement shall be deemed to disparage, denigrate or malign a Protected Person if such statement could be reasonably construed to adversely affect the opinion any other Person may have or form of any Protected Person. The foregoing limitations shall not be violated by truthful statements in connection with any legal or administrative proceeding, response to legal process, governmental testimony or filings, or administrative or arbitral proceedings (including, without limitation, pleadings, depositions or other discovery in connection with such proceedings).

Ex. 1 § 1(b).

21. Defendant acknowledged and agreed that "a breach or threatened breach" of these provisions "would give rise to irreparable harm to," among others, CMG Holdco, and that, if Defendant threatened to breach or did breach these provisions, CMG Holdco would "be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond), as well as an equitable accounting of all earnings, profits and other benefits arising from any violation of this Agreement." Ex. 1 §§ 1(viii); 2(b).

**Defendant's Misconduct**

22.     In March 2023, Defendant disavowed the non-compete provision in the Restrictive Covenant Agreement. He thereafter claimed that he was not bound by the provision and that he was free to compete with the CMG Parties in North Carolina and South Carolina. On at least two separate occasions, Defendant expressly stated that he was planning to engage in HVAC-related business in North Carolina. On one of these occasions, Defendant sent copies of documents that were provided to him by the general contractor for a project involving a restaurant in North Carolina who was seeking an HVAC company to act as a subcontractor. Defendant informed the CMG Parties that he was going to bid on the project. See, supra, ¶¶ 25 - 34.

23.     Starting in early February 2023, approximately 15 months after the Sale, Defendant embarked on a campaign of harassment that became increasingly aggressive and unprofessional. Over the ensuing six weeks, Defendant sent numerous emails and text messages to the CMG Parties, as well as at least one potential client, insulting, criticizing and otherwise harassing them professionally and personally.

**Defendant's Violation of His Non-Competition Obligations**

24.     On March 7, 2023, counsel for the CMG Parties sent a letter to Defendant, reminding him, *inter alia*, of his non-compete and non-disparagement provisions in the Restrictive Covenant Agreement.

25.     Defendant responded to this letter that same day by email, incorrectly stating: "there is no noncompete in place." Defendant forwarded his email later that day to Nicholas Sloan, Smith and two other DesignBuild employees, disparaging Sloane and Frank Zhang (CMG's Chief Financial Officer, President and Secretary): "This is who you are working for, complete unethical New York City Harvard graduated corporate scum bags! Bullies to

8

founders of their firms. . . . Watch your back guys." A true and correct copy of Defendant's March 7 email is annexed hereto as Exhibit 2.

26. On March 15, 2023, Defendant again emailed Sloane, informing him: "I will be working soon for a mechanical firm based out of Florida so you may hear my name through the vendor chain" and "I hope we can be friendly competitors moving forward once I have NC/SC responsibilities in my new job." A true and correct copy of Defendant's March 15 email is annexed hereto as Exhibit 3.

27. On March 17, 2023, in response to Defendant's overt threat to violate his non-compete obligations, counsel for the CMG Parties sent Defendant another letter reminding him of his obligations and informing him that if he fails to comply with his obligations, legal proceedings to enforce the Restrictive Covenant Agreement would be commenced. A true and correct copy of the March 17 letter is annexed hereto as Exhibit 4.

28. Defendant responded that day, stating "there is no longer a valid non compete or non solicitation." Defendant then emailed other DesignBuild employees several hours later, requesting the contact information for "the other 26 [CMG Holdco] partners" so that Defendant could share his communications with CMG Holdco with them, claiming "they really need to be made aware of what is coming their way." Defendant also stated that his "new job starts May 1st in Florida, Georgia and Virginia. NC & SC soon to follow! Lets be friendly competitors . . . ." True and correct copies of Defendants' two March 17 emails are annexed hereto as Exhibit 5.

29. On March 30, 2023, Defendant emailed Sloane and another DesignBuild principal, attaching specifications for an HVAC project for a restaurant in downtown Charlotte, North Carolina. Defendant indicated his clear intent to attempt to compete with DesignBuild and

CMG Holdco: "I am bid[d]ing this job, just an FYI as a friendly competitor!" A true and correct copy of the March 30 email is annexed hereto as Exhibit 6.

30. DesignBuild regularly works in downtown Charlotte; indeed, it is currently working on a site next to the site of the project on which Defendant said he is bidding. In addition, DesignBuild regularly works on projects for restaurant venues. Multiple completed restaurant projects are featured on DesignBuild's website, including Hickory Tavern, K&W Cafeteria, Royal Pig Pub, and Sabi Asian Bistro. DesignBuild typically works on several restaurant projects every year.

31. On information and belief, if Defendant were to win the contract on this project, he likely would immediately solicit DesignBuild employees to work for his new company, Mechanical Strategies, on this project.

32. On April 1, 2023, Defendant emailed Zhang and Sloane again. He stated his intent not to comply with his non-competition obligations: "We have voided the non-compete . . . and are actively engaging in business in NC/SC/FL/VA." A true and correct copy of the March 30 email is annexed hereto as Exhibit 7.

33. On April 5, 2023, Violette emailed Zhang and Sloane again. He repeated his intent not to comply with his non-competition obligations: "New job for [Mechanical Strategies]! Yay! I hope we can compete on a friendly basis." A true and correct copy of Defendant's April 5 email is annexed hereto as Exhibit 8.

34. Per the clear, unambiguous terms of the non-compete provision in the Restrictive Covenant Agreement, Defendant may not "own, operate, manage, control, promote, market, become or be financially interested in, consult with or for, perform services for, or associate in a business relationship with, or facilitate . . . any business engaged in . . . any business

10

activities that [DesignBuild], . . . in the twelve (12) months immediately preceding [November 1, 2021, engaged in, or are actively engaged in . . . ." See Ex. 1 § 1(a). Defendant's conduct is in blatant violation of this provision. Unless Defendant's conduct is enjoined, he will continue to engage in this misconduct and the CMG Parties will continue to suffer irreparable harm.

### Defendant's Harassment and Disparagement of CMG Holdco, DesignBuild and their Affiliates, Employees and Principals

35. CMG relies upon its industry reputation in order to continue to acquire and partner with target companies.

36. Beginning in early February 2023, Defendant initiated a campaign whereby he relayed disparaging remarks about CMG and its founders and employees to DesignBuild employees, DesignBuild industry contacts, and others.

37. In early February 2023, Sloane learned from Christine Suhs, CMG's Vice President of Human Resources, that Defendant was making disparaging remarks about CMG in the workplace and claiming that DesignBuild employees' jobs were at risk because of CMG.

38. Defendant text-messaged Sloane on February 14, 2023, indicating that he had reached out to a general contractor involved in a prospective project with a different CMG partner. He claimed he had made disparaging remarks about April Sayer, CMG's Vice President of Sales and Marketing (claiming she is just a "sales girl who never hung duc[t] work") and Mike Wade, CMG's Chief Operating Officer, (claiming he "holds license [but] is definitely not engaged [on a daily] basis"). Defendant then told the general contractor, "I would be very concerned if I were you to do some more due diligence before you sign this contract." A true and correct copy of Defendant's February 14 text message is attached hereto as Exhibit 9.

39. On information and belief, on February 17, 2023, DesignBuild's new Controller, Scott Miller, resigned after a week on the job solely because of Defendant's behavior.

11

On information and belief, Miller stated that Defendant yelled at him daily and was holding him to entirely unreasonable expectations. Zhang emailed Defendant (with Sloane copied) regarding Miller's resignation and informed Defendant that his behavior was unprofessional and not acceptable.

40. Defendant replied later that day with an email to Zhang and Sloane, copying Wade, Mike Cox (CMG's Chief Executive Officer), Joe Sutton (a manager at CMG), and Carlos Verde (a CMG analyst), as well as 10 employees from DesignBuild, including Smith. Defendant stated to Zhang: "Have you lost your mind Frank?" and "*Are you drunk*?" Defendant's email continued: "*Once again have you been drinking and are you intoxicated?  Never have I seen anything like this so off the board, that makes me think you are not in good health right now*." (Emphasis added.) A true and correct copy of this February 17 email is attached hereto as Exhibit 10.

### Defendant's Retention and Use of DesignBuild's Confidential Information

41. Defendant also has possession of two DesignBuild laptops that he has refused to return.  On information and belief, these laptops contain DesignBuild's Confidential Information (as that term is defined in the Restrictive Covenant Agreement), which Defendant is obligated to maintain as confidential and which he cannot use for any unauthorized purpose.  He has been asked to return the property several times but has refused to do so.

42. Unless Defendant's conduct is enjoined, Defendant will continue to engage in misconduct. By unfairly competing against and disparaging the CMG Parties, Defendant has and will continue to cause continuing and irreparable injury to CMG Holdco, for which there is no adequate remedy at law. Defendant's wrongdoing has caused and will continue to inflict irreparable harm to Plaintiffs by causing:

(a) Loss of DesignBuild current and prospective business;

(b) Loss of DesignBuild employees and employee and client confidence;

(c) Loss of CMG prospective partnerships;

(d) Injury to DesignBuild, CMG Holdco and their affiliates' reputation and goodwill;

(e) Damage to DesignBuild and CMG Holdco company morale and stability, and the undermining of their contracts, protocols and procedures; and

(f) Present and future economic loss from the foregoing, which is not ascertainable at this time.

43. The Restrictive Covenant Agreement waives the parties' rights to seek a jury trial.

> Waiver of Trial by Jury. Each party acknowledges and agrees that any controversy which may arise under this agreement is likely to involve complicated and difficult issues, and therefore each such party hereby irrevocably and unconditionally waives any right such party may have to a trial by jury with respect to any litigation directly or indirectly arising out of or relating to this agreement, or the transactions contemplated by this agreement. Each party certifies and acknowledges that (a) no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver, (b) such party understands and has considered the implications of this waiver, (c) such party makes this waiver voluntarily, and (d) such party has been induced to enter into this agreement by, among other things, the mutual waivers and certifications in this section.

Ex. 1 § 11.

## CAUSE OF ACTION
**(Breach of Contract)**

44. CMG Holdco realleges and incorporates herein by reference by reference the allegations of paragraphs 1 through 43 hereof.

45. As a condition for receiving approximately $3.0 million in connection with

13

the sale of Defendant's interests in DesignBuild, Defendant executed the Restrictive Covenant Agreement.

46. The Restrictive Covenant Agreement is a valid, enforceable contract between Defendant and CMG Holdco.

47. Per the non-compete provision in the Restrictive Covenant Agreement, Defendant may not "own, operate, manage, control, promote, market, become or be financially interested in, consult with or for, perform services for, or associate in a business relationship with, or facilitate . . . any business engaged in . . . any business activities that [DesignBuild], . . . in the twelve (12) months immediately preceding [November 1, 2021], engaged in, or are actively engaged in . . . ." See Ex. 1 § 1(a).

48. Defendant has breached the non-compete provision by engaging in HVAC-related business in North Carolina, as alleged herein.

49. Per the confidentiality provision in the Restrictive Covenant Agreement, Defendant may not disclose or use any of DesignBuild's Confidential Information, as that term is defined in the Restrictive Covenant Agreement, as summarized herein. See Ex. 1 § 2(a).

50. Upon information and belief, Defendant has and is breaching, and will breach, the confidentiality provision in connection with his engaging in HVAC-related business in North Carolina in competition with CMG Holdco, as alleged herein.

51. Per the non-disparagement provision in the Restrictive Covenant Agreement, Defendant may not "directly or indirectly (including through any other Person), make any public or private statements (whether orally, in writing or in any medium) that disparage, denigrate or malign the [DesignBuild], any of their Subsidiaries, [CMG Holdco], ZBS Mechanical Group, LLC, ZBS Mechanical Group Fund 2, LLC, ZBS Mechanical Group Parallel Fund, LLC,

any of their respective Affiliates, representatives, or the businesses, activities, operations, affairs, reputations, prospects, officers, managers, equity holders, directors or employees of any of the foregoing . . . ." See Ex. 1 § 1(b).

52.     Defendant has breached the non-disparagement provision by engaging in the conduct alleged herein.

53.     CMG Holdco has performed all of its duties and obligations under the Restrictive Covenant Agreement, and Defendant's performance has not been excused.

54.     CMG Holdco has been injured and will continue to be injured by Defendant's breach of the Restrictive Covenant Agreement in an amount that cannot readily be ascertained or compensated by money damages.

55.     As a direct and proximate result of Defendant's breach of the non-compete, non-disparagement, and confidentiality provisions in the Restrictive Covenant Agreement, CMG Holdco has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, CMG Holdco is entitled to preliminary and permanent injunctive relief and to compensatory and consequential damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court ORDER and DECREE that until such time as this Court orders otherwise:

A.     Preliminary and permanent injunctions restraining Defendant from, whether directly or indirectly,

> 1. whether as an officer, director, shareholder, member, manager, investor, partner, proprietor, business associate, employee, independent contractor, consultant, representative or otherwise, anywhere in the States of North Carolina and South Carolina, owning, operating, managing, controlling, promoting, marketing,

    becoming or being financially interested in, consulting with or for, performing services for, or associate in a business relationship with, or facilitating, any business engaged in any business activities that DesignBuild has, in the 12 months immediately preceding November 1, 2021, engaged in, or is actively engaged in, or has taken steps to become engaged in at any time during the five-year restriction period;

2. making any public or private statements (whether orally, in writing or in any medium, or through any other person) that disparages, denigrates or maligns DesignBuild, any of its parents or subsidiaries, CMG Holdco, ZBS Mechanical Group, LLC, ZBS Mechanical Group Fund 2, LLC, ZBS Mechanical Group Parallel Fund, LLC, any of their respective affiliates, representatives, or the businesses, activities, operations, affairs, reputations, prospects, officers, managers, equity holders, directors or employees of any of the foregoing, including such statement that could be reasonably construed to adversely affect the opinion any other person may have or form of any of the foregoing entities and individuals;

3. retaining, using, disclosing or transmitting for any purpose any Confidential Information belonging to or concerning CMG Holdco, DesignBuild and its parent company, or any of their affiliates.

B.    An injunction directing Defendant to return any and all Confidential Information belonging to or concerning CMG Holdco, DesignBuild and its parent company, or any of their affiliates that is in his possession;

C.    Awarding compensatory and consequential damages in an amount to be proven at trial; and

D.    Such other and further relief as the Court deems just and proper.

16

| | |
|---|---|
| **OF COUNSEL:** | */s/ Evan Williford* |
| Leonard Weintraub* | Evan Williford (No. 4162) |
| Ari Silverman* | THE WILLIFORD FIRM, LLC |
| Tara Curtin* | 1007 N. Orange St. Ste. 235 |
| Paduano & Weintraub LLP | Wilmington, DE 19801 |
| 1251 Avenue of the Americas, 9th Floor | (302) 654-5924 |
| New York, NY 10020 | evanwilliford@thewillifordfirm.com |
| (212) 785-9100 | |
| lw@pwlawyers.com | *Attorney for Plaintiff CMG Holdco, LLC* |
| ajs@pwlawyers.com | |
| tc@pwlawyers.com | |

(*pro hac vice* forthcoming)

Dated: April 18, 2023